**MINEWELD, INC., a Genex Corporation, Appellant,**

v.

**The BOARD OF BOILER AND PRESSURE VESSEL RULES, et al., Respondents.**

**No. WD 48036.**

Missouri Court of Appeals, Western District.

Jan. 18, 1994.

Paul A. Boudreau, Sondra B. Morgan, Brydon, Swearengen & England, Jefferson City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Theodore A. Bruce, Millie E. Aulbur, Asst. Attys. Gen., Jefferson City, for respondents.

Before TURNAGE, P.J., and HANNA and ELLIS, JJ.

TURNAGE, Presiding Judge.

Mineweld requested a special permit and variance from The Board of Boiler and Pressure Vessel Rules for the use of used railroad pressure tank cars to store and supply gaseous hydrogen. After a hearing, the Board denied a variance and special permit and on appeal the Circuit Court of Cole County affirmed. On this appeal Mineweld contends that it adduced sufficient evidence to justify the issuance of the variance and special permit. Reversed and remanded.

Mineweld purchased ten used railroad tank cars in 1989.[1] The truck assembly under each tank was removed and the tanks were placed at various Union Electric Company installations. The tanks store gaseous hydrogen which is used by Union Electric to cool turbine and generator bearings at its generator plants.

The tanks were installed and put to use without obtaining a permit. Thereafter, the State Fire Marshall learned of the use of the tanks and issued an order that the tanks not be used because a permit had not been obtained and because the tanks did not bear a stamp indicating that the tanks had been designed and constructed in accordance with the ASME code.

Upon receiving notice, Mineweld promptly discontinued using the tanks and in a letter to the Board applied for a variance from the application of the Board's rules and for a special permit under § 650.220, RSMo 1986.[2]

A hearing was held before the Board in which Mineweld presented extensive evidence concerning the materials and methods of manufacture of the railroad tank cars, and to show that the use of the tanks would be consistent with public safety. No other evidence was presented.

The Board denied a variance and a special permit but did not make findings of fact. The Board gave the following reasons for its refusal: (1) the Board's rules require that all pressure vessels have an ASME inspection stamp and these tanks do not, (2) the Board's rules require the owner of a second-hand boiler or pressure vessel to apply for permission to install a vessel before it is installed and Mineweld failed to do so, (3) § 650.220 allows for a special permit for new construction but the tanks are not new and, therefore, do not qualify for a special permit, and (4) the tanks were manufactured without third-party inspection and with a safety factor inconsistent with the ASME code.

Section 650.200 to § 650.290 is the Boiler and Pressure Vessel Act. Section 650.210, RSMo1990 Supp., establishes the Board of Boiler and Pressure Vessel Rules and § 650.-215, RSMo1990 Supp., grants the Board the power to formulate rules and regulations for the safety of construction and installation of boilers and pressure vessels.

Section 650.220 provides:

No power boiler, low pressure boiler or pressure vessel which does not conform to the rules and regulations formulated by the board governing new construction and installation shall be installed and operated in this state after twelve months from the date upon which the first rules and regulations under sections 650.200 to 650.290 pertaining to new construction and installation have become effective, unless the boiler or pressure vessel is of a special design or construction, and is not inconsistent with the spirit and safety objectives of the rules and regulations, in which case a special installation and operating permit may at its discretion be granted by the board.

Mineweld first contends that it was entitled to a special permit because the tanks are of special design and construction and are consistent with the spirit and safety objectives of the Board's rules and regulations. The Board dealt with this request when it stated that the special permit was for new construction and the tanks were not new, therefore, they did not qualify for a special permit.

1. A special permit and variance was not requested for all ten tank cars, but the record is not clear as to the exact number.

2. All statutory references are to Revised Missouri Statutes 1986, unless otherwise stated.

Section 650.220 provides that no pressure vessel which does not conform with the Board's rules and regulations shall be installed and operated unless the pressure vessel is of a special design or construction and is not inconsistent with the spirit and safety objectives of the rules and regulations. The Board simply found that since the tanks were not new that they were not entitled to a special permit. This is a bare conclusion which ignores the issue presented to the Board of whether or not the tanks were of a special design or construction and, if so, could they be used consistently with the spirit and safety objectives of the rules and regulations governing pressure vessels. There was no issue of whether or not the tanks were new-Mineweld concedes they were not. The only issue was whether or not the tanks were of a special design or construction and if they qualified for a special permit.

■ The Board failed to make findings of fact responsive to the issue framed. When the Board fails to make findings of fact responsive to the issues presented for decision, there is nothing for this court to review. *Webb v. Board of Police Com'rs of Kansas City*, 694 S.W.2d 927, 929[2] (Mo.App.1985). The Board must make findings of fact sufficient to allow this court to perform the review allowed by law. *Id.*, Section 536.090. For that reason the decision of the Board must be reversed.

The Board also stated that its rules required all pressure vessels to have an ASME stamp and these tanks did not. This is simply stating a fact conceded by Mineweld. Obviously if the tanks had the stamp there would be no need to obtain a special permit. This statement fails as a finding of fact on the issue of whether or not Mineweld should be granted a special permit because it contended the tanks were of a special design or construction.

■ Mineweld also sought a variance under the rules of the Board. The Board adopted 11 C.S.R. 40–2.020(1)(C) which provides that before a second-hand pressure vessel is installed, application for permission to install such vessel shall be filed with the chief inspector of the Board and approval obtained. Mineweld installed the tanks without applying for or obtaining the approval of the chief inspector. 11 C.S.R. 40–2.020(29) provides that any person who believes a rule promulgated by the Board is unreasonable, or imposes an undue burden on the owner or user, may request a variance from the operation of the rule. Mineweld requested the variance. Rather than making findings of fact dealing with the issue of whether or not Mineweld should be given a variance, the Board simply stated that Mineweld failed to obtain approval before the tanks were installed—a fact conceded by Mineweld. Again the Board failed to make findings of fact responsive to the issue presented for decision. The application for a variance required the Board to make findings of fact on whether or not Mineweld suffered an undue burden by the strict application of the rule. The Board ignored the issue presented and only stated the obvious—that Mineweld failed to get a permit. This did not constitute a finding of fact sufficient for this court to review. *Century State Bank v. State Banking Board of Mo.*, 523 S.W.2d 856, 859[3] (Mo.App.1975).

Mineweld introduced an abundance of evidence in an effort to demonstrate that the tanks were manufactured according to standards comparable to the requirements of the ASME code. This evidence was designed to demonstrate that under § 650.220 the use of the tanks would not be inconsistent with the spirit and safety objectives of the rules and regulations regarding the installation and use of the pressure vessels. This evidence was uncontradicted. The Board simply found that the tanks were manufactured without third-party inspection and with a safety factor inconsistent with the ASME code. The Board in its findings ignored the evidence presented by Mineweld concerning the construction of the tanks and the opinion of experts that they could be safely used. In *Missouri Church of Scientology v. State Tax Comm.*, 560 S.W.2d 837, 843[7, 8] (Mo. banc 1977), the Court held that an administrative agency "may not arbitrarily disregard or ignore undisputed testimony of a witness not shown to have been impeached or disbelieved ..." by the agency. Here, the Board ignored the evidence adduced by Mineweld but

made no finding that such evidence was disbelieved. In the face of the evidence of Mineweld that the tanks could be safely used, the finding by the Board that the tanks do not meet the intent of the Boiler and Pressure Vessel Act is unsupported by any evidence.

■ This appears to be the first time that this Board has been called upon to hold a hearing and to make findings of fact and conclusions of law. However, the rules relating to administrative agencies apply to the Board and those rules are well established. On remand the Board should make findings of fact and conclusions of law as required by § 536.090 and the cases cited herein.

Because the Board failed to make findings of fact on the issues raised by the application of Mineweld, there is nothing for this court to review. The judgment of the Circuit Court is reversed, and this cause is remanded to that court with directions to remand this cause to The Board of Boiler and Pressure Vessel Rules for further proceedings. On remand the Board may hear additional evidence in favor of or opposed to the application. The Board shall make findings of fact and conclusions of law as required by law.

All concur.